# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| SANQUINETTE PORTERFIELD, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | Case Number: |
| v. ) | 2:17-cv-00939-JEO |
| ) | |
| NANCY A BERRYHILL, ACTING ) | |
| COMMISSIONER OF THE ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Sanquinette Porterfield ("Plaintiff") has sued the Social Security

Administration ("SSA" or "Defendant") for alleged violations of Title II of the

Family and Medical Leave Act ("FMLA"), 5 U.S.C. § 6301 *et seq*.; the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; and Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (Doc. 1). [1]  The

SSA has filed a motion to dismiss the complaint. (Doc. 7).  Plaintiff opposes the

motion or, in the alternative, asks the court for leave to amend her FMLA and

ADA claims. (Doc. 14).  Plaintiff also has filed a separate motion for leave to file

an amended complaint (doc. 22), which is opposed in part by the SSA (doc. 25).

---

[1] Citations herein to "Doc(s). __" are to the document numbers assigned by the clerk, as reflected on the docket sheet to the pleadings, motions, and other documents in the court file.

For the reasons that follow, the court will grant in part and deny in part the motion to dismiss and the motion for leave to amend the complaint, and will allow Plaintiff to file an amended complaint to assert a claim or claims under the Rehabilitation Act, 29 U.S.C. §§ 791, 794.

## I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff began working for the SSA in 2009 as a Teleservice Representative in Birmingham, Alabama.  (Compl. ¶ 10).[2]  She fell and injured her wrist in July 2009, requiring surgery that year and again in 2011.  (*Id.* ¶ 11).  Plaintiff also suffers from migraine headaches and provided a letter from her physician to the SSA documenting the migraines.  (*Id.* ¶ 13).  She further claims she suffers from anxiety and depression.  (*Id.*)

Plaintiff missed work on various days between December 4, 2012, and February 25, 2013, due to her wrist injury and the resulting surgeries, as well as from February 26, 2013, through February 17, 2015, due to migraine headaches, anxiety, and depression.  (*Id.* ¶¶ 14-15).  She attributes her anxiety and depression to sexual advances from her immediate supervisor, George Green.  (*Id.* ¶ 13).  Plaintiff also states that she requested a transfer out of the Birmingham SSA Office because of sexual harassment, but it was denied.  (*Id.*)

---

[2] References herein to "(¶ ___)" are to a specific paragraph of the Complaint, which is found at document 1.

On July 9, 2014, Plaintiff was counseled concerning her absences from work and a written record of the counseling was placed in her personnel file. (*Id.* ¶ 16-18). She attributes this counseling session and write-up to her "repeated rejection" of Green's sexual advances. (*Id.*) She also asserts that these actions constitute retaliation for taking FMLA leave. (*Id.* at ¶ 21).

On October 29, 2014, Plaintiff filed an Equal Employment Opportunity ("EEO") discrimination complaint with SSA's Office of Civil Rights and Equal Opportunity ("CREO"). (*Id.* ¶ 7). She received the final decision on her EEO complaint on March 8, 2017, and filed the instant lawsuit on June 6, 2017. (*Id.* ¶¶ 8-9). In her initial federal complaint, she alleges three claims under the FLMA, including claims for interference with her FMLA rights, discrimination, and retaliation (First, Second, and Third Claims, respectively); a claim under the ADA for discrimination (Fourth Claim); and a claim under Title VII for sex discrimination and sexual harassment (Fifth Claim). (Doc. 1).

In her proposed "First Amended Complaint," Plaintiff asserts four Title VII claims (First, Second, Third, and Fifth Claims) and one claim under the Rehabilitation Act (Fourth Claim). (Doc. 22-1). The SSA opposes her motion to

file an amend complaint, except to the extent the motion seeks to present a

Rehabilitation Act claim.[3]  (Doc. 25).

## II.    STANDARDS OF REVIEW

### A.    Motion to Dismiss

The SSA's motion to dismiss the complaint is based on (1) a lack of subject

matter jurisdiction (*see* Fed. R. Civ. P. 12(b)(1)); (2) Plaintiff's failure to state a

claim (*see* Fed. R. Civ. P. 12(b)(6)); and (3) Plaintiff's failure to exhaust

administrative remedies.  (Doc. 7).  Each will be addressed below.

#### 1.    Rule 12(b)(1)

With respect to subject matter jurisdiction, the plaintiff must "allege with

sufficient particularity the facts creating jurisdiction" of the court and, if

challenged, the facts that support maintaining jurisdiction.  *Morrison v. Allstate*

*Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000) (quoting *St. Paul Mercury*

*Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287, n.10 (1938) (quotations omitted)).

"Although the plaintiff bears the burden of proving the court's jurisdiction, the

plaintiff should be given the opportunity to discover facts that would support his

allegations of jurisdiction."  *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d

901, 903 (11th Cir. 1984) (citations omitted).  "'[A] plaintiff must have ample

---

[3] The SSA has reserved its right to challenge in a subsequent motion to dismiss any claim
Plaintiff might seek to advance in an amended complaint.

opportunity to present evidence bearing on the existence of jurisdiction.'" *Id.* (quoting *Colonial Pipeline v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991)).

A challenge to the court's jurisdiction pursuant to Rule 12(b)(1) may be based upon either a facial or a factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). In a facial attack, the court may only look to see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, taking the facts alleged as true. *Id.* Factual attacks challenge the existence of subject matter jurisdiction as a matter of fact, and the court may consider matters outside of the pleadings. *Id.* The court may dismiss an action based on the complaint alone, the complaint supplemented by undisputed facts, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *See id.*; *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) ("irrespective of the pleadings" the court may consider "matters outside the pleadings, such as testimony and affidavits" on a factual challenge and "no presumptive truthfulness attaches to plaintiff's allegations") (citation omitted)).

### 2.    Rule 12(b)(6)

A motion to dismiss for failure to state a claim may be granted when the complaint is so factually deficient that the plaintiff's claim for relief is not plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The court must accept all factual statements as true when deciding a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory legal allegations devoid of any factual support do not enjoy the same presumption of truth. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level," but this is not a high bar, as plaintiffs need only plead facts sufficient to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547, 555.

### 3.    Exhaustion

The Eleventh Circuit has held that exhaustion of administrative remedies is a jurisdictional prerequisite to filing a Title VII action. *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999) (citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 832-33 (1976)); *see also Bloodworth v. Colvin*, 17 F. Supp. 3d 1245, 1250-51 (N.D. Ga. 2014). "'The purpose of exhaustion is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer. Good faith effort by the employee to cooperate with the agency and EEOC and to provide all relevant, available information is all that exhaustion requires.'" *Id.* (quoting *Wade v. Sec'y of the Army*, 796 F. 2d 1369, 1377 (11th Cir. 1986)).

## B.    Amendments to a Complaint

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Leave shall be freely given "when justice so requires." *Id.* Motions for leave to amend a complaint may be denied for various reasons, including undue delay, undue prejudice to the defendants, and futility of the amendment. *See, e.g.*, *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003) (citations omitted).

## III.   Analysis

### A.    The FMLA

The first three claims in the original complaint are brought under the FMLA, which allows employees to take leave from their jobs for health or family-related reasons. The FMLA was enacted under two titles. *See* 5 U.S.C. §§ 6381-6387. Title I generally governs leave for private employees. Most federal employees, however, are governed by Title II. *Cavicchi v. Sec'y of Treasury*, No. 04-10451, 2004 WL 4917357, *6 (11th Cir. 2004). The parties do not dispute that Plaintiff is a federal employee covered by Title II. (*See* Doc. 14 at 13; Doc. 18 at 2). The SSA argues that Plaintiff's first three claims should be dismissed because they are barred by sovereign immunity. (Doc. 7 at 5-7).

Sovereign immunity precludes a Title II federal employee from bringing suit to enforce an FMLA claim. Courts in the Third, Fourth, Ninth, Tenth, and Eleventh Circuits have held there is no private cause of action for a federal employee under the FMLA. *See, e.g.*, *Burg v. United States Dep't of Health and Human Servs.*, 387 F. App'x 237 (3d Cir. 2010) (unpublished); *Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir. 1997); *Russell v. United States Dep't of the Army*, 191 F.3d 1016, 1019 (9th Cir. 1999); *Berry v. FAA*, Civil Action No. 05-cv-00779-WYD-CBS, 2006 WL 446080 (D. Colo. Feb. 21, 2006) (citing *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989)); *Schuman v. Perry*, 2017 WL 2951918 (N.D. Okla. Jul. 10, 2017); *Cavicchi*, 2004 WL 4917357, at *6; *Souers v. Geren*, 2010 WL 1169730 (S.D. Ga. Mar. 23, 2010).

Plaintiff concedes the lack of a private right of action as to her FMLA claims, but argues that she may advance her independent FMLA claims because they were brought "in conjunction with an action in which the court does have jurisdiction," namely, other discrimination, harassment, and retaliation claims. (Doc. 14 at 13-15). She cites *Bogumill v. Office of Personnel Mgmt.*, 168 F.3d 1320, 1998 WL 486754 (Fed. Cir. Aug. 13, 1998) (unpublished), and *Smith v. Wynne*, 494 F. App'x 867 (10th Cir. 2012), in support of her position. The SSA does not oppose affording Plaintiff an opportunity to amend her complaint to

"clarify her allegations," while reserving the right to file a motion to dismiss any "unviable FMLA claims."  (Doc. 18 at 2 (citing Doc. 14 at 14-15)).

In both cases cited by Plaintiff –*Bogumill* and *Smith*—the courts stated that the FMLA allegations could not be raised as "freestanding" or "independent" FMLA claims.  *See Smith*, 494 F. App'x at *3 ("we do not understand her arguments to be an attempt to assert freestanding FMLA interference and retaliatory conduct claims against the Air Force.  Rather, plaintiff continues to assert her FMLA rights as an affirmative defense to her termination.") and *Bogumill¸* 1998 WL 486754, at *2 ("Because there is no independent cause of action available to a federal employee to assert violations of the FMLA, a federal employee can only raise such asserted violations in connection with actions over which the Board otherwise has jurisdiction. … Thus, in order for the Board to have the power to consider an alleged violation of the FMLA, the federal employee must also assert some appealable adverse action taken against the employee in which the alleged violation of the FMLA is implicated.").  Thus, these cases are inapposite.  Additionally, neither case suggests that defensive use of FMLA claims somehow overcomes the sovereign immunity protection that is still applicable to affirmative FMLA claims.

As noted previously, Plaintiff also has submitted a motion for leave to file an amended complaint, which includes her proposed "First Amended Complaint."

The court finds that her first three claims in the proposed amended complaint contain allegations involving the SSA's handling of her FMLA leave.  (Doc. 22-1). To the extent these claims are intended to present free standing substantive FMLA claims (*see* Am. Compl. at ¶¶ 21, 27-39, 47-50, 56-58), they will not be allowed for the reasons discussed previously.  To the extent these claims (First, Second, and Third) are intended to advance Title VII claims, their viability will be addressed below.  Finally, to the extent these allegations are offered to explain the impropriety of the handling of her situation by the SSA, they are permissible, but should be presented within the remaining permitted Rehabilitation Act claim or claims.

## B.    The ADA

Plaintiff's fourth claim in the original complaint is brought under the ADA. Plaintiff alleges in that claim that she improperly was demoted and terminated because of her disability or the exercise of her rights under the ADA and that the SSA's reliance on her absence as a reason for its actions was a pretext for disability discrimination.[4]  (Compl. ¶¶ 49-50).  The SSA asserts that "the ADA excludes the 'United States' from its definition of a covered entity."  (Doc. 7 at 7).  Plaintiff concedes that the ADA "is not applicable to federal agencies" and she asserts that

---

[4] The SSA also notes that Plaintiff has not been demoted or terminated.  (Doc. 7 at  13).  Plaintiff does not directly respond to this assertion.  (*See* Doc. 14).

her ADA claim "should have been a rehabilitation claim." (Doc. 14 at 12). She seeks permission to re-plead the ADA claim under the Rehabilitation Act. *See* 29 U.S.C. § 701 *et seq.*

The SSA is correct that the ADA only applies to "covered entities." 42 U.S.C. § 12112(a). The "United States" is excluded as an employer. 42 U.S.C. § 12111(5)(B)(i). The SSA, therefore, may not be held liable for a violation of the ADA. *See, e.g.*, *Dockery v. Nicholson*, 170 F. App'x 63, 65 (11th Cir. Feb. 7, 2006). Accordingly, this claim is due to be dismissed. Plaintiff, however, will be afforded leave to re-plead this claim. While she has already submitted a "First Amended Complaint" that includes an ADA claim, the court finds that for the various reasons stated herein, it will be necessary for Plaintiff to file another amended complaint to comport with this court's order on the present motions.[5]

## C. Title VII

Plaintiff's fifth, and final, claim in the original complaint is brought pursuant to Title VII. *See* 42 U.S.C. § 2000e, *et seq.* She claims the SSA discriminated against her on the basis of her gender and failed to act concerning the alleged sexual harassment. (Compl. ¶¶ 54-63). The SSA argues that Plaintiff failed to exhaust her administrative remedies concerning these allegations. (Doc. 7 at 7-13). Specifically, the SSA alleges that Plaintiff failed to complain of sexual

---

[5] For clarity, the amended complaint should be referred to as the "Second Amended Complaint."

discrimination or harassment in her 2014 EEO complaint or at any other time. (*Id*.)  Plaintiff responds that, even if she did not file a separate sexual discrimination or harassment EEO complaint, she did complain of such actions during the agency's investigation of her 2014 complaint.  She further states that the filing of a separate formal complaint is not required "because the EEOC's investigation covered all of the actions made a part of [Plaintiff's] sexual discrimination, retaliation, and harassment claims."  (Doc. 14 at 11).

Federal regulations govern the processing and handling of discrimination and harassment complaints, which must be made within 45 days of any occurrence. 29 C.F.R § 1614.105(a)(1).  If initial informal resolution is not achieved, a formal complaint may be filed.  Thereafter, the employee can pursue the complaint with the EEOC Office of Federal Operations ("OFO").  *Id.* §§ 1614.106(a), 1614.108(f), 1614.110(b).  After an OFO final decision on appeal, the employee may file her federal lawsuit.  *Id.* § 1614.407(c).

As noted previously, "[a] federal employee must pursue and exhaust her administrative remedies as a jurisdictional prerequisite to filing a Title VII action." *Crawford*, 186 F.3d at 1326 (citing *Brown*, 425 U.S. at 832-33).  She must give the agency the requisite relevant and specific information needed to investigate and resolve the dispute.  *Id.* (quoting *Wade v. Sec'y of the Army*, 796 F.2d 1369, 1377 (11th Cir. 1986)).

Exhaustion of administrative remedies is a matter in abatement that should be raised in a motion to dismiss, or treated as such if raised in a motion for summary judgment. *See Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (addressing the Prison Litigation Reform Act's exhaustion requirements). Thus, it is permissible for a district court to consider facts outside of the pleadings and resolve factual disputes so long as the factual disputes do not decide the merits and the parties are given sufficient opportunity to develop a record. *Id.* at 1376. Deciding a motion to dismiss for failing to exhaust administrative remedies is a two-step process. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). First, the court must look to the factual allegations in the defendant's motion and the plaintiff's response, taking the plaintiff's version of the facts as true to the extent that it conflicts with that of the defendant. *Id.* If the complaint is not subject to dismissal at this step, the court must then make specific findings to resolve the parties' factual disputes, and determine whether the defendant bore its burden of proving that the plaintiff failed to exhaust his administrative remedies. *Id.* at 1082-83.

*Basel v. Sec'y of Defense*, 507 F. App'x 873, 874-75 (11th Cir. 2013) (unpublished).

A plaintiff's judicial complaint is limited by what was originally put before the reviewing agency and by what "can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (quoting *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1332 (11th Cir. 2000)) (quotations omitted). At the same time, in reviewing challenges based on exhaustion of administrative remedies, courts are hesitant to allow procedural technicalities to bar Title VII claims that are often filed without the benefit of legal counsel, so "the scope of an EEOC complaint should not be strictly

interpreted." *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460-61 (5th Cir. 1970)).[6]

Here, Plaintiff's administrative complaint and the evidentiary submissions give absolutely no indication that sexual discrimination, sexual harassment, or Title VII retaliation claims were raised at any time during the investigation of the leave counseling allegations.[7] "A sexual harassment claim . . . cannot grow out of an EEO complaint that makes no reference of sexual conduct." *Palmer v. Potter*, No. 1:08-CV-3876-CAM-AJB, 2010 WL 11500520, *18 (N.D. Ga. Jan. 12, 2010), report and recommendation adopted, 2010 WL 11508700 (N.D. Ga. Mar. 25, 2010); *see also Penaloza v. Target Corp.*, 549 F. App'x 844, 848-49 (11th Cir. 2013) (citing *Mulhall v. Advance Sec.*, 19 F.3d 586, 589, n.8 (11th Cir. 1994) ("a disability discrimination claim" cannot be expected to grow out of a "sex and pregnancy discrimination charge, even on a broad reading of [the] EEOC complaint")); *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 599 (11th Cir. 2008) ("Title VII charges based on race and national origin were

---

[6] The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[7] The evidence before the court consists of the following: Plaintiff's formal EEO Complaint with attached EEO Counselor's Report (Doc. 7-2), Plaintiff's signed statement prepared by the SSA's EEO Contract Investigator (Doc. 7-3), and Plaintiff's Statement in Support of OFO Appeal (Doc. 7-4). Plaintiff also submitted selected pages from her EEO complaint (Doc. 14-1), a January 7, 2015 letter to her union representative from the SSA (Doc. 14-2), and the November 2, 2016 OFO Decision (Doc. 14-3).

appropriately barred because those charges could not 'reasonably be expected to grow out of the EEOC disability charge.'"); *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) (affirming dismissal of Title VII national origin claim when EEOC filing was limited to disability discrimination and retaliation for complaining of disability discrimination in violation of the ADA).

Plaintiff's formal EEO complaint filed in October 2014 lists the basis of her claim as "Discrimination/Physical Disability,"[8] the issue presented in the complaint as being "Harassment," and the brief description of her claim as "See pages 3 through 14" of the EEO Counselor's Report. (Doc. 7-2 at 6). Nowhere in those twelve attached pages does she mention sexual harassment, sex discrimination, or retaliation. She did include the following handwritten statement along with her EEO complaint: "I disagree with management statements and I stand by my original statements. I would like to take my case to the formal stage of the EEO process." (*Id*. at 7). Even construing her allegations liberally, the court cannot discern any reference to alleged sexual harassment, sex discrimination, or retaliation in the complaint or any of the attachments thereto. (*Id*. at 13-24).

Plaintiff's signed statement of February 23, 2015, which was made to the EEO contract investigator, is limited to her disability discrimination claim. The

---

[8] The EEO Counselor's Report also lists the type of discrimination complained about as physical disability. (Doc. 7-2 at 12).

statement contains no mention of, or reference to, sex discrimination or sexual

harassment. (Doc. 7-3). The last paragraph states:

> The Investigator has advised me that she is only authorized to
> investigate the issue which was delineated in the January 7, 2015
> Letter of Acceptance of my complaint (specifically, the June 9
> Counseling which I received from Mr. Green) and, as such, does not
> have the authority to investigate my concerns regarding the AWOL
> charge and management's home contacts with me. I understand that,
> should I wish to have these concerns investigated, I must contact
> SSA's Office of Civil Rights and Equal Opportunity to request an
> amendment of my complaint.

(*Id.*at 8). Plaintiff correctly argues that this statement was created by the SSA

investigator and is not a sworn affidavit, but it is, nonetheless, Plaintiff's signed

statement. She did not include any statements, comments, or references to sexual

misconduct at that or any other time. She also has not presented any evidence that

she elsewhere pursued complaints or claims of sexual discrimination, harassment,

or retaliation. She did not present evidence that she contacted or attempted to

contact SSA's CREO division to discuss sexual discrimination. She did not submit

any evidence showing any attempt to file or pursue any amendments to her

complaint.

Likewise, her subsequent October 2015 appeal to the OFO, drafted and

signed by her representative, states only that "the Agency discriminated against her

[(Plaintiff)] on the basis of physical disability not disparate treatment." (Doc. 7-4

at 3).  Her appeal fails to mention sexual misconduct and any effort by the SSA to hinder or hamper such a complaint.

Plaintiff highlights two footnotes in the January 7, 2015 letter from CREO accepting her EEO Complaint for investigation.  (Doc. 14-2 at 1).  She claims these footnotes at the beginning of the letter support her argument that her complaints of sexual harassment, discrimination, and retaliation were within the scope of the agency's investigation of her charge.  (Doc. 14 at 7 (referencing Doc. 14-2 at 1, n.1 & 2)).  The first footnote references  the "disparate treatment" she allegedly suffered "on the basis of [her] disability (physical)" in reference to the leave counseling.  (Doc. 14-2 at 1).  This reference does not help Plaintiff.  The alleged "harassment" "appears to consist of one issue," specifically the leave counseling related only to her disability claim, not any incident of sexual misconduct.[9]  *Id.*

The second footnote references "other comments" provided by Plaintiff to the SSA in "PS Form 2565" – her "formal complaint."  *Id.*  The footnote states that "this information appears to be background information" and that she "will be able to discuss such matters in relation to the accepted issue."  *Id.*  The court finds that this footnote does not support her argument either.  First, despite the fact that Plaintiff has been afforded a full opportunity to develop a record and present other

---

[9] This is also supported by the EEO Counselor's report that specifically lists the harassment as "non-sexual."  (*See* Doc. 7-2 at 12).

documents to the court, *Bryant*, 530 F.3d at 1376, she has not included any explanation of what the background information was and with whom it was discussed.[10] Second, this letter predates Plaintiff's signed, February 23, 2015 statement, in which she also does not mention or allude to sexual discrimination, harassment, or retaliation as discussed above. (*See* Doc. 7-3 at 9). Third, the record before this court shows that Plaintiff never sought to amend her EEO complaint to clearly state a case of sexual harassment, discrimination, or retaliation.

In sum, the court finds that Plaintiff has failed to exhaust her administrative remedies as to the sexual harassment and discrimination claims. Accordingly, the SSA's motion to dismiss the Title VII claims is due to be granted in this respect.[11]

---

[10] The SSA argues, and Plaintiff does not dispute, that her reference to PS Form 2565 is a typo. The SSA version of the form, SSA-675, has been submitted to the court in its entirety. (*See* Doc. 7-2).

[11] The cases cited by Plaintiff in support of her argument that the alleged sexual harassment is related to the disability discrimination complaint are unpersuasive. In *Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997), the court held that the plaintiff's termination claim was not encompassed in her ADA claim involving the defendant's failure to allow her to apply for an operations job. The court held that because the EEOC made no mention of her termination, the termination claim was not properly exhausted. That is Plaintiff's problem in this case. Her sex related claims were not mentioned in the administrative proceedings, and therefore are precluded. In *Johnson-Parks v. D.C. Chtd. Health Plan*, 806 F. Supp. 2d 267, 270-71 (D.D.C. 2011), the plaintiff referenced her retaliation claim in her intake questionnaire, but not on the EEOC charge. The court held this was sufficient presentation of the claim, particularly where the plaintiff further explained her allegations in the questionnaire. *Id.* at 271. Here, in contrast, Plaintiff did not check any appropriate box and did not provide any explanation of claims related to sex or gender. *Davis v. Dunn Constr. Co., Inc.*, 872 F. Supp. 2d 1291 (N.D. Ala. 2012), and *Gregory v. Georgia Dep't of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004), are cited for the proposition that "the Court considers, *inter alia*, whether the claim is like or reasonably related to the allegations and arises from the administrative

To the extent that Plaintiff's First Amended Complaint seeks to advance claims pursuant to Title VII, they are precluded. In fashioning her "Second Amended Complaint," Plaintiff is barred from advancing the Title VII claims for sexual discrimination, harassment, or retaliation.

### D.    Punitive Damages

The SSA also asserts that Plaintiff's claims for punitive or liquidated damages are due to be dismissed because she is a federal employee. (Doc. 7 at 14). Plaintiff does not respond to this claim. (*See* Doc. 14). Because Plaintiff's Title VII claims are due to be dismissed and because Plaintiff agrees that her FMLA claim is improvidently pled, this issue is moot as to those claims. The court does note that punitive damages are not recoverable against a federal employer under Title VII, the FMLA, or the ADA. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Therefore, the claims for liquidated or punitive damages on these claims would be due to be dismissed. Because Plaintiff will be given an opportunity to re-allege her ADA claims under the Rehabilitation Act, the court notes that punitive damages may not be awarded in private suits brought under the Rehabilitation Act. *Id*.

---

investigation that can reasonably be expected to follow the charge of discrimination." (Doc. 14 at 11). The proposition cited by the Plaintiff is correct and has been applied by the court in this action.

### E.    State Law Claims

Lastly, the SSA moves to dismiss any state law claims Plaintiff may be attempting to advance in her original complaint.  (Doc. 7 at 14-15 (citing Compl. at ¶ 1).  Plaintiff does not address this aspect of the defendant's motion.  (*See* Doc. 14).  Accordingly, any state law claims are deemed abandoned.

The only mention of state law claims in the complaint appears in the first paragraph and nowhere else.  (Compl. ¶ 1).  The court finds that Plaintiff has not alleged any state law claims.  Because she is represented by counsel, she is not entitled to the less strict pleading standards afforded *pro se* plaintiffs.  *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

Additionally, any state law employment-related claims would be precluded. Congress has set out a comprehensive statutory scheme for claims of discrimination by federal employees that would preempt any state law claims Plaintiff might seek to advance against the defendant.  *See Brown v. Gen. Svcs. Admin.*, 425 U.S. 820, 833-34 (1976) (holding Title VII is the "exclusive judicial remedy" for federal employee discrimination claims).  Accordingly, any claims Plaintiff might seek to advance pursuant to Alabama State law are precluded.

## IV. CONCLUSION

Based on the above, the SSA's motion to dismiss (doc. 7) is due to be granted in part and denied in part and Plaintiff's motion for leave to amend (doc. 22) is due to be granted in part and denied in part. Accordingly, Plaintiff will be granted leave to file a "Second Amended Complaint," re-pleading her ADA claim or claims under the Rehabilitation Act. Plaintiff will be afforded 21 days to file her Second Amended Complaint. Plaintiff's Title VII, FMLA, and ADA claims are due to be dismissed, as are her claims for liquidated or punitive damages and under state law.[12] A separate order consistent with the findings herein will be entered.

**DATED**, this 23rd day of May, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge

---

[12] To be clear, the court's ruling herein does not preclude Plaintiff from relying on her FMLA allegations in fashioning her "Second Amended Complaint" or in responding to defenses offered by the SSA. They cannot, however, serve as a basis for a free-standing substantive claim under the FLMA. Additionally, the SSA is permitted to file any appropriate challenge to any claims advanced in Plaintiff's Second Amended Complaint.